STATE EX REL. DURHAM TROPICAL LAND CORPORATION, Respondent, vs. WISCONSIN REAL ESTATE BROKERS BOARD and others, Appellants.

*November 13, 1926—March 9, 1927.*

*Brokers: Licenses: Applicant must show trustworthiness: Requirement that applicant furnish financial statement: License sought to sell Florida land: Review of order of State Real Estate Brokers Board by court: Presumption: Certiorari.*

1. *Certiorari* to a *quasi*-judicial board brings up for review only jurisdictional errors. p. 398.
2. The Wisconsin Real Estate Brokers Board, created pursuant to sec. 136.01, Stats., need not show that one seeking a broker's license is untrustworthy and incompetent, but the applicant must satisfy the board of his trustworthiness and competency, the word "trustworthy" signifying worthy of trust; and in financial or business transactions it means worthy of trust in reference thereto. pp. 400, 401.
3. It was proper for the state board to require a financial statement of an applicant for a broker's license to sell Florida real estate, and the refusal of the applicant to furnish such statement was a suspicious circumstance justifying a denial of the license. p. 400.
4. Courts should hesitate in compelling the issuance of a broker's license, which carries with it the commendation of the licensee as a trustworthy and competent broker. p. 401.
5. A resolution of the state board that applicants for the sale of Florida real estate would be regarded with disfavor is *held* not to indicate prejudice against an applicant for the sale of such land, because from common knowledge and its special expert knowledge the board had a right to assume that the

State ex rel. Durham Corp. v. Brokers Board, 192 Wis. 396.

usual results of a land boom would follow the Florida boom. p. 402.

6. This court will presume that the Wisconsin Real Estate Brokers Board has conformed to the law and has carried out the legislative intent in the law of its creation. p. 403.

ROSENBERRY, J., dissents.

APPEAL from a judgment of the circuit court for Dane county: AUGUST C. HOPPMANN, Circuit Judge. *Reversed.*

This is an appeal by the *Wisconsin Real Estate Brokers Board* from a judgment reversing an order of said board denying the relator a real-estate broker's license.

The appellants claim that the court erred in holding that the relator was trustworthy and competent; in denying the board's motion to strike out certain allegations in the relator's petition; in failing to hold that the relator's evidence was insufficient; and in holding that the action of the board was contrary to the evidence, unreasonable, and arbitrary.

For the appellants there was a brief by the *Attorney General* and *Michael J. Dunn, Jr.,* assistant attorney general, and oral argument by *Mr. Dunn.*

*William Doll* of Milwaukee, for the respondent.

The following opinion was filed December 7, 1926:

CROWNHART, J.   The *Wisconsin Real Estate Brokers Board* was created in pursuance of sec. 136.01, Stats. Under sub. (11) of said section it is provided that any person desiring to act as a real-estate broker shall file with the board an application for license, in such form as shall be prescribed by the board, and set forth certain required information. By sub. (e) of that subsection it is provided that the applicant shall set forth—

"such further information as the board may reasonably require to enable it to determine the trustworthiness of each applicant, including each member of the firm, or each officer of the corporation, and his or their competency to transact

the business of a real-estate broker or salesman in such manner as to safeguard the interests of the public."

By sub. (19) the board is authorized to require the production of books, papers, and documents.

By sub. (5) it is provided:

". . . Licenses shall be granted only to persons who are trustworthy and competent to transact the business of a real-estate broker or real-estate salesman in such manner as to safeguard the interests of the public, and only after satisfactory proof thereof has been presented to the board."

In *Payne v. Volkman,* 183 Wis. 412, 419, 198 N. W. 438, in considering the purposes of this section, this court said:

"Citizens of this state were being defrauded in large amounts through the activities of so-called real-estate brokers, many of whom were not citizens of this state and who came here for the purpose of exploiting its people."

The action in the circuit court was by writ of *certiorari.* The law is too well settled to require citation of authorities that *certiorari* to a *quasi*-judicial board brings up for review only jurisdictional errors. If, under any reasonable view of the evidence, the board had jurisdiction to refuse a license, the court will not disturb its decision.

The relator is a foreign corporation, authorized to do business in this state. It applied to the *Real Estate Board* for a broker's license to sell in Wisconsin real estate it owned in Florida. It furnished the required information about its officers, and put into the record copies of advertising matter concerning the real estate for sale. One W. D. Isham, who represented the corporation as its agent in Wisconsin, testified before the board. At the conclusion of his testimony the board asked for a financial statement of the condition of the corporation. The attorney for the corporation said he thought such a statement was confidential and doubted that it would be furnished. He later consulted the

Florida manager of the company, and that official refused the information in a letter, an extract from which was submitted to the board, as follows:

"This company will be unwilling to publish its financial statement or to submit the same to any board. We think it is sufficient to say that we own 60,000 acres of lands which are free and clear of every incumbrance and that our only obligation is to purchasers of that land, to all of whom we are able to make good title upon the payment of the price. In view of this, it seems to me that it is altogether unnecessary to submit our statement."

The circuit court, in its opinion, said:

"There is not a scintilla of evidence in the records even tending to show that the applicant, or the persons in control of the applicant, are not 'trustworthy' or 'competent.' On the contrary, all the evidence, oral and documentary, before the respondent was to the effect that the affairs of the applicant were in the hands of 'trustworthy' and 'competent' men. . . . From a careful examination of the whole record it appears that the action of the respondent was contrary to the evidence, was unreasonable, and arbitrary."

This brings us to a review of the evidence and the right of the board to demand a financial statement. The advertising matter submitted by the relator to the board contains very glowing accounts as to the fertility of the land in question, the crops that could be raised thereon, and the profits to be made therefrom. The testimony of Mr. Isham was to the effect that the land could be cleared for from $15 to $35 an acre; that they proposed to sell the land at $75 an acre. He testified that it would cost about $125 an acre for fertilizer. This statement as to fertilizer is significantly absent from the advertising matter submitted. Mr. Isham testified that he interviewed one Tilghman, who resided on land near the tract in question, and that the land was of the same general character as relator's land; that Tilghman had cleared $254 on one-tenth acre of celery; that his average income from the land per acre for celery was $1,500 or

$2,000; that his income from thirteen acres of orchard and eight acres of crops was $22,000 a year; that his average income per acre on this tract of land for the first years was $1,500 to $2,000; that he paid $3,800 for his farm and refused to take $100,000 for it.

Mr. Isham said it was not the purpose of the company to sell the land on the basis of increased valuation, but purely as agricultural lands. When asked about the fertilizer he said:

"I don't think a man selling land in Wisconsin is expected to tell a purchaser how much fertilizer is necessary on the land."

The land had been covered with pine and palmetto forest, but most of the timber had been removed. The company had a capitalization of $500,000 and a paid-in capital of $100,000. The tract consisted of 60,000 acres, which, if sold at the price asked, would amount to $4,500,000.

At the conclusion of the testimony Mr. Gumm, a member of the board, said:

"We would like to have an opportunity for close examination in regard to the financial condition."

To this Mr. Doll, attorney for the relator, replied:

"I will have to communicate with the main office at St. Petersburg, but I do not think they will furnish that statement."

We cannot agree with the decision of the circuit judge. The board was not required to take the affirmative and show that the relator was untrustworthy and incompetent; on the contrary, it was relator's duty to satisfy the board as to its trustworthiness and competency. We must not forget that from common knowledge the board was bound to look with some suspicion on companies dealing in real estate far distant from Wisconsin buyers. Frauds of amazing proportions had been perpetrated upon our citizens in the past, and the future will always hold out temptations to the irre-

sponsible to perpetrate like frauds. We conclude that the board very properly required a financial statement of the relator before granting a broker's license. Moreover, the refusal to comply with such request was a suspicious circumstance fully justifying such board in denying the license. 1 Wigmore, Evidence, § 285, lays down the principle:

"The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party."

See 1 Jones, Comm. on Ev. (Horwitz ed.) § 19 *et seq.*

Courts should hesitate in compelling the issuance of a broker's license, which is in effect much more than a mere permission to sell real estate. It carries with it the commendation of the licensee as a trustworthy and competent broker, upon whom the public has a right to rely. If the board grants licenses to untrustworthy applicants, the public will be in greater danger of fraudulent practices than it was before the board was created.

Every one knows that in business transactions bankers consider a financial statement a necessary precedent to a loan to a stranger. The relator would have had difficulty in securing any loan in Wisconsin upon the evidence presented. No banker would have considered relator trustworthy if it refused such a statement when it was seeking a loan. "Trustworthy" signifies worthy of trust, and in financial or business transactions it means worthy of trust in reference thereto. The relator, seeking to sell Florida lands in Wisconsin, was reasonably required to show its ability to make good on any representations it should make as to lands it sought to sell. Purchasers would have a right to rely on such representations and would have actions for fraud or deceit in case of false representations. The request

for a statement of the financial condition of the company was therefore pertinent and proper.

The relator complains of a resolution of such board, found in its minutes, as follows:

"Whereas, it is a matter of common knowledge that Florida land, both as to subdivision lots and agricultural lands, are being offered at prices which are extremely speculative and under advertising which is highly colored, and it is extremely difficult to obtain satisfactory information as to land values in Florida at the present time:

"Therefore be it resolved, that the *Wisconsin Real Estate Brokers Board* look with disfavor on applications for the sale of Florida real estate in Wisconsin under present conditions."

It is claimed that such resolution is *prima facie* evidence of prejudice on the part of the board against the relator. We will not indulge in any such presumption. The court will presume that the members of the board were and are conscientious in their efforts to protect the public against fraud and deceit, and in interpreting the law honestly, in accordance with their oath of office. The resolution evidently was actuated by existing conditions to the common knowledge of the board, that at that time there was what is known in common parlance as the "Florida boom," of nation-wide magnitude. The board had a right to assume from such common knowledge, and the special expert knowledge which it necessarily had, that the usual results of such booms would follow. It therefore candidly expressed itself as looking with disfavor upon the issuance of licenses to brokers in this highly speculative enterprise. This did not indicate prejudice against relator, but a desire to protect the public against false and misleading practices which are naturally and usually a part of every boom. The board has a high duty to the public to perform. It must perform that duty with fidelity in the public interest. Until the court is

convinced to the contrary by the record, it will presume that the board has conformed to the law and has carried out the legislative intent in the passage of the law creating the board and conferring broad powers upon it.

· *By the Court.*—The judgment of the circuit court is reversed.

The following opinion was filed December 9, 1926:

ROSENBERRY, J. (*dissenting*). I cannot concur in the construction placed upon sub. (5) of sec. 136.01, Stats. It is my view that the construction amounts to an amendment of the statute and that licenses can be granted henceforth only to persons "who are trustworthy and competent" and financially responsible in the opinion of the board. If it had been the intention of the legislature to include financial responsibility as an element of trustworthiness, that intent might have been expressed very easily. A man may be financially responsible even in a banking sense and be very untrustworthy in personal dealings. On the other hand, he may be very trustworthy in every relation in life and still be without financial responsibility in the business sense. The legislature recognized these facts and phrased the statute accordingly.

If it is necessary for the protection of the people of this state that its citizens should be permitted to deal only with those real-estate agents who are financially responsible, it is the prerogative of the legislature to declare that fact. If the board may make its determination contingent in one case upon financial responsibility and ignore it in other cases, then the statute gives the board an arbitrary, uncontrolled discretion.

A motion for a rehearing was denied, with $25 costs, on March 9, 1927.