Maryland Casualty Company, Appellant, vs. Indus-
trial Commission of Wisconsin and others, Re-
spondents.

*October 8, 1928—February 5, 1929.*

204

For the appellant there was a brief by *James E. Coleman,* attorney, and *William J. McCauley,* of counsel, both of Milwaukee, and oral argument by *Mr. McCauley.*

For the respondents there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, attorneys for the Industrial Commission, and *Frank R. Bentley* of Madison, attorney for George Pollock, and oral argument by *Mr. Levitan* and *Mr. Bentley.*

The following opinion was filed November 7, 1928:

ROSENBERRY, J. It is the contention of the plaintiff here as it was in the court below and before the Industrial Commission that the determination of the question of whether or not a contract existed between the plaintiff insurance carrier and the employer, Pollock, was a matter over which the Industrial Commission had no jurisdiction.

Sec. 102.16 (1), Stats. 1925, provides:

"Any dispute or controversy concerning compensation under sections 102.03 to 102.34, inclusive, including any in which the state may be a party, shall be submitted to said

industrial commission in the manner and with the effect provided in sections 102.03 to 102.34, inclusive."

Secs. 102.03 to 102.34, inclusive, prescribe with exactitude who shall be liable for compensation, who is entitled to compensation, and the amount of compensation to be awarded, depending upon the injury.

By sec. 102.31 (1) it is provided:

"Every contract for the insurance of the compensation herein provided for, or against liability therefor, shall be deemed to be made subject to the provisions of sections 102.03 to 102.34, inclusive, and provisions thereof inconsistent with sections 102.03 to 102.34, inclusive, shall be void. Such contract shall be construed to grant full coverage of all liability of the assured under and according to the provisions of sections 102.03 to 102.34, inclusive, notwithstanding any agreement of the parties to the contrary unless the industrial commission has theretofore by written order specifically consented to the issuance of a contract of insurance on a part of such liability. No such contract shall be canceled or revoked within the policy period until a notice in writing shall be given to the industrial commission, fixing date on which it is proposed to cancel or revoke such contract, such notice to be served personally or by registered mail on the industrial commission at its office in the state capitol. No such cancellation or revocation shall be effective as against the claim of an injured employee until ten days after the service of such notice, unless the employer has obtained other insurance coverage for the protection of such employee, prior to the time of the injury for which claim is made. Every contract of insurance shall be written for the period of not less than one year."

Sub. (2) of the section provides for the organization of mutual companies; sub. (3) for the examination of the books of the insurance carrier; and sub. (4) for reports. The statute nowhere confers upon the Industrial Commission the authority to hear any dispute or controversy except those concerning compensation under the act. A controversy as to whether or not a contract of indemnity exists

between an employer and an insurance carrier cannot be said to be a controversy concerning compensation. A suit upon a policy of fire insurance does not relate to fire,—it relates to the agreement of the insurance carrier to pay the insured the amount of his loss. The extent of the fire merely measures the amount of the loss.

So here, as the commission observed, there is no controversy with regard to compensation. The only controversy in the case relates to whether or not the plaintiff company entered into a contract with the employer. In the absence of the workmen's compensation act, there can be no question but that the plaintiff company would have a right to have the question of whether or not it was liable and, if it was liable, the amount of damages, determined by a jury trial. The claim which the employer asserts against the plaintiff company does not arise out of the workmen's compensation act, but arises if at all out of a contract which the employer entered into with the plaintiff company. It being once established that an insurance carrier has entered into a contract with an employer, that contract is then subject to the terms of the workmen's compensation act because the insurance carrier has consented that it shall be so. But to say that the Industrial Commission may determine, over the objection of the insurance carrier, that it has made a contract, and that because it has it is subject to the act, is to beg the entire question. If the act attempted to confer in express terms upon the Industrial Commission power to determine disputes and controversies arising between employers and insurance carriers, the act providing for no trial *de novo* upon any question, a very serious question as to the constitutionality of the act would be raised. We do not, however, meet that question in this case because the legislature has not attempted to confer such power or authority upon the commission. By the language of the statute the Industrial Commission may determine only those disputes and controversies concerning

compensation under secs. 102.03 to 102.34, inclusive. It may be urged that the same contention might be made successfully respecting the right of the Industrial Commission to determine a dispute as to whether or not the relation of employer and employee exists. Such, however, is not the case. The basis of the workmen's compensation act is that it is a regulation of the relation of employer and employee or master and servant. No dispute as to compensation can arise until it is found that the relation of employer and employee exists. It is considered, therefore, that controversies relating to that question are to be determined by the Industrial Commission under the provisions of sec. 102.16.

*By the Court.*—That part of the judgment appealed from is reversed, and the cause remanded with directions to the trial court to set aside the award as against the plaintiff company.

The following opinion was filed February 5, 1929:

*On rehearing.*

ROSENBERRY, J. On the motion for rehearing and in another case the questions dealt with in the first opinion filed in this case have been re-argued and re-investigated. In the first opinion it was said that the question of whether or not the employer was indemnified was not a controversy with respect to compensation under the workmen's compensation act. Further study and consideration convinces us that we were in error in so concluding.

It may be observed in the beginning that the power of the state to deal with the entire subject in including assurance that the workmen entitled to compensation shall receive compensation is very broad. *New York Cent. R. Co. v. White,* 243 U. S. 188, 37 Sup. Ct. 247; *Mountain T. Co. v. Washington,* 243 U. S. 219, 37 Sup. Ct. 260. A state having the power to require an employer to pay certain sums into a fund

to be administered by the state for the purpose of guaranteeing to injured employees compensation for their injuries under the act, must necessarily have very broad powers of regulation. When it does not pursue that method and permits the employer to pursue within certain limitations other means of assuring compensation to his employees, it must be furnished upon the terms prescribed by the state. Attention was called in the original opinion to the fact that the act requires, in the absence of special permission by the Industrial Commission, that every policy insuring against liability for workmen's compensation shall in its coverage be coextensive with the provisions of the statute. The statute also provides:

"Section 102.31 (2). No company shall enter into any such contract of insurance unless such company shall have' been approved by the commissioner of insurance, as provided by law."

The plaintiff company is a foreign corporation and is required to comply with certain provisions of the Wisconsin statutes as a condition of doing an insurance business within the state of Wisconsin (sec. 201.38). When licensed, such foreign insurance corporation may transact in this state only such kinds of business as under the laws of this state a like domestic corporation is authorized to transact, and may not transact any business in this state not specified in the certificate of authority granted by the commissioner of insurance (sec. 201.40). So that a foreign corporation stands upon the same footing with respect to the laws of the state of Wisconsin that a domestic corporation stands.

A study of the workmen's compensation act (ch. 102, Stats.) convinces us that with respect to insurance the statutory scheme was intended to do more than merely protect the employer against liability on account of injuries sustained by his employees. The quite evident purpose of the whole scheme is to guarantee payment of compensation in accord-

ance with the terms of the act to the injured employee. Instead of providing for a fund to be administered by the state, the act requires the employer to "insure payment of such compensation in some company authorized to insure such liability in this state unless such employer shall be exempted from such insurance by the industrial commission."

And an employer failing to comply with this statutory requirement is guilty of a penal offense and subject to fine and imprisonment. It is then provided:

"Section 102.31 (1). Every contract for the insurance of the compensation herein provided for, or against liability therefor, shall be deemed to be made subject to the provisions of sections 102.03 to 102.34, inclusive, and provisions thereof inconsistent with sections 102.03 to 102.34, inclusive, shall be void. Such contract shall be construed to grant full coverage of all liability of the assured under and according to the provisions of sections 102.03 to 102.34, inclusive, notwithstanding any agreement of the parties to the contrary unless the industrial commission has theretofore by written order specifically consented to the issuance of a contract of insurance on a part of such liability."

There are also certain restrictions on the right of the insurance carrier to cancel or revoke its policy. In addition to the powers of visitation which the insurance commissioner has with respect to the insurance company, the Industrial Commission is also given authority to examine the books and records of any insurance company issuing policies on account of liability of employers under the workmen's compensation act.

The legislative purpose is further indicated by sec. 102.30 (2):

"The failure of the assured to do or refrain from doing any act required by the policy shall not be available to the insurance carrier as a defense against the claim of the injured employee or his dependents."

The insurance carrier is likewise given a right to reimbursement in the event of recovery against a third party, and

many other provisions of the statute confer broad powers upon the insurance carrier with respect to the proceedings before the Industrial Commission and other procedural matters.

From a consideration of the whole statutory scheme we conclude that the provisions of the statute relating to insurance are principally for the purpose of securing to the employee payment for compensable injuries. The statute not only gives him a right against his employer, but when the right has been vindicated and the amount of compensation ascertained, it seeks to secure payment to him of the compensation. Therefore, when an insurance company undertakes to write workmen's compensation insurance it assumes the employer's obligation to pay compensation. The measure of its liability under its policy and the statute is the employer's liability to the injured employee. It is permitted to make no defense which will impair the employee's right to payment of compensation. Its liability is in effect primary. It is not a mere indemnity. It is therefore considered that a controversy relating to compensation insurance is, within the meaning of the provisions quoted in the original opinion, a dispute or controversy concerning compensation. If an insurance company were to claim that it had never entered the field of workmen's compensation insurance and that nevertheless a claim was made against it under the workmen's compensation act, a situation would be presented where the insurance company might be entitled to a trial according to the course of the common law. That situation is not presented in this case. Here it appears that the plaintiff company had been engaged in the business of writing workmen's compensation insurance. It is not disputed that it had written a policy upon this identical risk. It had therefore submitted itself to the law and to the jurisdiction of the Industrial Commission with respect to all matters relating to compensation under the act, including the question of whether or not it had in this instance in fact renewed its policy; and

upon those questions it is not entitled to a jury trial. It was doing business under the act and so subject to it. Nor is the insurance carrier denied due process under the act within the decisions cited.

This brings us to a consideration of the merits. The facts are set out in the original opinion. It is quite apparent that the arrangement between the insured, Pollock, and the agent, Kizer, did not amount to a payment of the premium. A third party cannot receive the property of a principal in discharge of the agent's personal obligation. In this case the premium if and when paid belonged to the insurer, and the agent could not use that money to discharge his personal liability to the insured. *Brovan v. Kyle,* 166 Wis. 347, 165 N. W. 382; 2 Corp. Jur. p. 883, § 570, and cases cited. The first policy expired on June 11, 1926. Pollock, the insured, entered into an arrangement with Kizer, the agent, for the renewal of this insurance on June 11 or 12, 1926. Kizer had been notified by the plaintiff that Pollock's insurance would expire and directed him to procure a renewal thereof. Under the arrangement between the plaintiff company and its agent, the agent had sixty days in which to remit renewal premiums. By his application for a renewal of his policy, Pollock became liable for the payment of the premium and for future pay-roll adjustments. That Kizer was the agent of the plaintiff company for the purpose of securing renewal of this insurance there can be no doubt. Kizer as agent of the company assured Pollock that the policy was renewed. Pollock relied upon this assurance. It appears that the agent, Kizer, in the usual and customary course of business charged himself with the premium due on account of Pollock's policy and took credit for the commission and had sixty days in which to make settlement with his principal. The insurance carrier having sought a renewal of the policy, having authorized its agent, Kizer, to procure such a renewal, Kizer having as agent of the company charged himself with the amount

due to the company for the premium, the agent having advised the insured that he was protected, we cannot escape the conclusion that the plaintiff became bound to issue a policy as of the expiration of the prior policy and is liable accordingly. The arrangement between the plaintiff and its agent certainly amounted at the very least to authority on the part of the agent to extend credit during the sixty-day period in which the agent might make settlement. Under the facts in this case, although there was no payment of the premium the insurer became bound to the insured and liable under a renewal of the policy as of the date of the expiration of the first policy. What the rights of the parties would have been if the sixty-day settlement period had expired and the agent had neglected to make settlement, we need not determine because, before that period arrived, liability had accrued and the rights of all parties became fixed. The plaintiff having directed its agent to procure a renewal and the agent having given the insured to understand that the policy was in fact renewed, the agent having charged himself and so made himself liable to the plaintiff company for a settlement of the premium, it must be held that during the interim the insurance was in force. *Milwaukee Bedding Co. v. Graebner,* 182 Wis. 171, 196 N. W. 533.

*By the Court.*—The former mandate in this case is vacated and set aside. It is ordered that the judgment appealed from be affirmed. The motion for rehearing is denied, without costs to either party, the defendant to pay the clerk's fees.

On April 2, 1929, a motion for a rehearing was denied, with $25 costs.