STATE EX REL. PROGRESO DEVELOPMENT COMPANY, Appellant, vs. WISCONSIN REAL ESTATE BROKERS BOARD, Respondent.

*May 2—June 23, 1930.*

156

For the appellant there was a brief by *Miller, Mack & Fairchild* and *Harvey C. Hartwig,* and oral argument by *Mr. J. G. Hardgrove* and *Mr. Hartwig,* all of Milwaukee.

For the respondent there were briefs by the *Attorney General* and *Frank W. Kuehl,* assistant attorney general, and *William Doll* of Milwaukee, special counsel, and oral argument by *Mr. Doll* and *Mr. Kuehl.*

ROSENBERRY, C. J.    A determination of the issues raised upon this appeal requires a consideration of the so-called Wisconsin real estate brokers' law, being ch. 136, Stats. 1929.    The material parts of the law are printed in the margin.[1]

---

[1] 136.01   *Definitions.*   Terms as used in this chapter are defined as follows:

(1)  "Board" means the Wisconsin Real Estate Brokers Board.

(2)  "Real-estate broker" means any person, firm or corporation, not excluded by subsection (3) of this section, who, for another, and for commission money or other thing of value:

(a)  Sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of an interest or estate in real estate; or,

(b)  Collects, or offers or attempts to collect, rent for real estate; or,

(c)  Negotiates, or offers or attempts to negotiate a loan, secured, or to be secured, by mortgage or other transfer of or incumbrance on real estate.

(3)  creates exceptions not material here.

(4)  "Real-estate salesman" means one who is employed by a licensed real-estate broker to sell or offer for sale, to buy or offer to buy, or to negotiate the purchase or sale or exchange of real estate, or to negotiate a loan on real estate, or to lease or offer to lease, rent or place for rent any real estate.

136.02   *Brokers licensed.*   No person, firm or corporation shall engage in or follow the business or occupation of, or advertise or hold himself or itself out as or shall act temporarily or otherwise as a real-estate broker or real-estate salesman in this state, without first procuring a license therefor as provided in this chapter.   Licenses shall be granted only to persons who are trustworthy and competent to transact the business of a real-estate broker or real-

The act specifically provides that a corporation may be a broker. The relator, although a foreign corporation, having been licensed to do business in the state of Wisconsin, is entitled to the same privileges and rights in that respect as a domestic corporation. While the state may exclude foreign corporations, when once admitted they have the same rights and are entitled to the protection of the constitutional guaranties the same as is a domestic corporation. *Maryland Cas. Co. v. Industrial Comm.* 198 Wis. 202, 221 N. W. 747, 223 N. W. 444; *Thronson v. Universal Mfg. Co.* 164 Wis. 44, 159 N. W. 575.

The only qualifications prescribed by the act are that the licensee shall be trustworthy and competent. Competency is defined by sub. (2) of sec. 136.05. The issues in this case present no question in regard to the competency of the applicant. The term *trustworthy* is not defined in the act.

---

estate salesman in such manner as to safeguard the interests of the public, and only after satisfactory proof thereof has been presented to the board.

136.03 relates to the creation of the board.

136.04 relates to the organization, officers, bonds, members of the board.

136.05 (1) relates to form of application for a license.

(2) In determining competency, the board shall require proof that the applicant for a broker's license has a fair knowledge of the English language, a fair understanding of the general purposes and general legal effect of deeds, mortgages, land contracts of sale, and leases, a general and fair understanding of the obligations between principal and agent, as well as of the provisions of this chapter.

136.06 contains further provisions relating to form of application, amount of fee, etc.

136.07 *Licenses.* (1) *Expiration.* A license issued by the board shall entitle the holder thereof to act as a real-estate broker, or if the application is for a real-estate salesman's license, to act as a real-estate salesman in this state up to and including the thirty-first day of December following issuance of such license.

(2) *Corporate license.* If the licensee is a corporation, the license issued to it shall entitle the president thereof or such other officer as may be designated by such corporation, to act as a real-estate broker. For each other officer who desires to act as a real-estate broker in behalf of such corporation, an additional license shall be applied for and issued, the annual fee for which shall be

What the legislature had in mind as constituting trust-worthiness is indicated to some extent by the provisions of sec. 136.08 (printed in the margin), wherein is set out the matters which constitute grounds for revocation of a license. Certainly no applicant who was found to have done any of the things which constitute grounds for revocation could be held to be trustworthy. The legislature, however, did not limit the board to consideration of those matters in determining what constitutes trustworthiness. It becomes necessary for the court, therefore, to determine what power or authority was conferred upon the board in that respect. In this connection specific attention is called to sec. 136.09, which provides for a public hearing upon notice with an opportunity to be heard, and requires that the testimony presented and proceedings had in such hearing shall be taken in shorthand and preserved as the record of the board, and

one dollar for a real-estate broker's license. No license as a real-estate salesman shall be issued to any officer of a corporation nor to a member of a copartnership to whom a license was issued as a real-estate broker. If the licensee is a copartnership, the license issued to it shall entitle one member thereof to act as a real-estate broker, and for each other member of the copartnership who desires to act as a real-estate broker an additional license shall be applied for and issued, the annual fee for which shall be one dollar for a real-estate broker's license.

(3) relates to brokers' liability for acts of salesmen.

(4) *Roster of brokers.*

136.08 *Investigations, revocation of license.* (1) The board may on its own motion make investigations and conduct hearings and may, on its own motion, or upon complaint in writing, duly signed and verified by the complainant, and upon not less than ten days' notice to the real-estate broker or salesman, suspend any real-estate broker's or salesman's license if it has reason to believe, and may revoke such license in the manner provided hereafter, if it finds that the holder of such license has:

(a) Made a material misstatement in the application for such license;

(b) Made any substantial misrepresentation with reference to a transaction injurious to a seller or purchaser wherein he acts as agent;

(c) Made any false promises of a character such as to influence,

requires the board to make its findings and determination *thereon* and send a copy to the interested party.

We have recently had occasion to consider the term *findings* as used in the workmen's compensation act. *Tesch v. Industrial Comm.* 200 Wis. 616, 229 N. W. 194. The findings are required to be upon the testimony presented and the proceedings had upon the hearing and are obviously meant to be findings of fact. Upon these findings the board was required to make its determination or conclusion. The conclusion reached by the board in this case was that "the applicant has failed to furnish this board with satisfactory proof of its trustworthiness and competency." This manifestly is not a finding of fact but the board's determination. The findings of fact are extended and we shall not set them out *in extenso*.

persuade or induce the seller or purchaser to their injury or damage;

(d) Pursued a continued and flagrant course of misrepresentation or made false promises through agents or salesmen or advertising;

(e) Acted for more than one party in a transaction without the knowledge of all parties for whom he acts;

(f) Accepted a commission or valuable consideration as a real-estate salesman for the performance of any of the acts specified in this chapter, from any person except his employer;

(g) Represented or attempted to represent a real-estate broker other than the employer, without the express knowledge and consent of the employer;

(h) Failed, within a reasonable time, to account for or remit any moneys coming into his possession which belong to another person;

(i) Demonstrated untrustworthiness or incompetency to act as a real-estate broker or salesman in such manner as to safeguard the interests of the public;

(j) Paid or offered to pay a commission or valuable consideration to any person for acts or services in violation of the provisions of this chapter;

(k) Been guilty of any other conduct, whether of the same or a different character from that specified herein, which constitutes improper, fraudulent or dishonest dealing; or

(l) Violated any provision of this chapter.

(2) If a broker is a company it shall be sufficient cause for the suspension or revocation of a broker's license that any officer, di-

By way of introduction to its findings the board inserted a paragraph entitled "The Board's Position," in which it is said:

"We wish to make it clear in this order that the action of this board in denying the above application must not be construed as passing upon the lower Rio Grande Valley, as a declaration of the commission that the projects of the lower Rio Grande Valley are not legitimate, nor as an act to discriminate against the state of Texas. This board has made the same careful inquiry relating to all projects located in states outside of Wisconsin and has gone so far as to make close inquiry of all Wisconsin brokers who were selling Wisconsin land of any questionable character. The board has uniformly denied applications of several organizations to sell land in the state of Florida during the Florida boom, lands also located in the state of California and in various other states." . . .

---

rector or trustee of the company, or any member in case of a partnership, has been guilty of any act or omission which would be cause for refusing a broker's license to such person as an individual.

(3) A copy of the complaint, together with notice of suspension of the license, if ordered by the board, shall forthwith be served upon the real-estate broker or salesman complained against by personal service or by mailing same to his last known business address, and in case the complaint is against a salesman a copy of the complaint and notice shall also be served upon the broker for whom he is acting. The person so served shall file his answer thereto with the board within ten days after such service and also serve a copy of such answer on the complainant. The board shall thereupon set the matter for hearing as promptly as possible and within thirty days after the date of filing of the complaint. Either party may appear at such hearing in person or by attorney or agent.

136.09 *Denial or revocation of license, procedure.* (1) No order denying or revoking a license shall be made until after a public hearing or hearings held before the board, or before any member thereof, or before any duly authorized employee whose report the board shall have adopted. Such hearing or hearings shall be held in the county wherein the applicant for a license or the real-estate broker complained of or whose salesman is complained of has his place of business. In the event that said broker or salesman is a nonresident, such hearing shall be held at such place as may be designated by the board.

(2) At least ten days prior to the date of hearing, the board shall send written notice of the time and place of such hearing to the

"This board also has in mind that the granting of a license to a person who proposes to sell Texas land in the state of Wisconsin, particularly after the exhaustive hearings which have been conducted by the board, carries with it a commendation of the project which is to be offered for sale to Wisconsin residents. It virtually amounts to giving the project a stamp of approval, and the board must be very hesitant in granting such application where it appears that such project is extremely speculative and, if in any reasonable degree doubtful in this respect, should not grant the application."

The board makes an extended quotation from the case entitled *State ex rel. Durham Tropical Land Corp. v. Brokers Board,* 192 Wis. 396, 211 N. W. 292.

The findings are under eight heads: (1) Purpose for which land is to be sold. (2) Methods of sale. Under this head is the following finding:

---

applicant for a license or to the complainant and to the party complained against and to their respective attorneys or agents of record by mailing same to the last known address of such persons. The testimony presented and proceedings had at such hearing shall be taken in shorthand and preserved as the records of the board. The board shall as soon thereafter as possible, and within ninety days after the date of filing of a complaint, make its findings and determination thereon and shall send a copy thereof to each interested party.

136.10 prohibits fee splitting with any person not licensed broker or licensed salesman.

136.11 relates to actions for commissions.

136.12 relates to nonresident brokers.

136.13 authorizes the board to compel attendance of witnesses and the production of books, papers, and documents.

136.14 provides that a person or corporation denied a license cannot renew its application until the expiration of such a period as may be determined by the board not exceeding two years.

136.15 *Court review.* The action of the board in refusing to grant a license or in revoking a license hereunder shall be subject to review by writ of *certiorari* brought in the circuit court for Dane county; but the action of the board shall stand until otherwise directed by said court or by the supreme court of the state upon appeal.

136.16 provides penalties for violation of the act.

"The land is to be offered for sale by the applicant as an investment opportunity, applicant making promises of an annual net return after the first four years of ten per cent. upon the investment of the purchaser. This feature, however, is not contained in the written instruments which are signed by the applicant and given to purchasers but is a matter of sales talk."

(3) Price at which land is to be offered for sale. (4) The Texas boom. (5) Experimental stage, under which heading is the following:

"When we consider that the land of the applicant is to be sold for the average purchase price of $1,250 per acre in a project which must be regarded as experimental, this board, in view of the high duty which it owes to the public interest, must exercise great care and caution before granting permission to sell such land to Wisconsin residents for investment purposes."

(6) Care and attention. (7) Vendor lien notes. (8) Water supply.

Upon these findings, which contain nothing in any way reflecting upon the character or business methods of the applicant or its officers, the board bases its determination as to the trustworthiness and competency of the applicant. From the findings it is clear that the board placed a very broad interpretation upon that part of the act which defines its powers. It did this very largely if not wholly in reliance upon the decision of this court in the *Durham Tropical Land Corp. Case, supra.* However, we see nothing in that decision which warrants the conclusion that the board reached in this case. In that case the applicant had refused to furnish a financial statement which had been called for under the provisions of what now appears as sub. (e) of sec. 136.05 (1). The board was of the opinion that the refusal of the applicant to furnish evidence of its financial status constituted grounds for denying its application. This determination of the board was upheld by the court. The trustworthiness of a corporation must to some extent at least

depend upon its financial standing. While a corporation may, like an individual, have a good reputation for trustworthiness, ordinarily it is not considered trustworthy in a business sense in a higher degree than is fairly warranted by its net assets. The financial standing of the applicant in the *Durham Case* was therefore a material factor without which the board could not properly determine the question before it. In the statement of its position the board quotes the following from the opinion in the *Durham Corporation Case:*

"Courts should hesitate in compelling the issuance of a broker's license, which is in effect much more than a mere permission to sell real estate. It carries with it the commendation of the licensee as a trustworthy and competent broker upon whom the public has a right to rely. If the board grants licenses to untrustworthy applicants the public will be in greater danger of fraudulent practices than it was before the board was created."

It is evident from a perusal of the record that the board in this case construed the statute as authorizing it to investigate as to the soundness or unsoundness of the investments which the broker was proposing to offer to the public, and if in the opinion of the board such offerings were highly speculative that it was evidence of untrustworthiness and that the board should for that reason deny the application. The clause quoted from the *Durham Corporation Case* certainly does not support the conclusion of the board. It is the trustworthiness of the applicant that controls.

This case in no essential particular parallels the *Durham Corporation Case* unless it be that the lands in this case are located in Texas and the lands in the *Durham Corporation Case* are located in Florida. The applicant in this case fully and completely complied with all the demands made by the board concerning financial standing, methods of doing business, and the character of the project which it proposed to offer to Wisconsin residents. It is not suggested that the financial responsibility of the applicant in this case can be

fairly questioned. There is no evidence in the case and no finding that the applicant has dealt unfairly with Wisconsin citizens.

We have searched the act in vain for any language which confers upon the board the power to make a determination as to the soundness or unsoundness of the investments which may be offered by the broker and to grant or deny a license applied for accordingly as the board 'finds the investments are sound or unsound. We are not called upon to consider the extent to which the legislature might properly go in the constitutional exercise of its powers in this respect, nor have we anything to do in this case with the questions of public policy involved. Whether it would be wise to set up a board and require all projects to be submitted to it before permitting them to be offered to the public is a matter which lies in the first instance at least wholly within the legislative field. From what is said it should not be inferred that we in any way criticise the motives of the board. It was quite evidently actuated by the highest ideals of public service and the result of its investigations may well be pondered by any person desiring to invest in lands of the character under consideration. However, our duty in the premises is to discover the limits of the authority conferred upon the board by the legislature and to determine whether or not the board acted within those limits in accordance with the provisions of the law creating it. We pointed out in *State ex rel. Wisconsin Inspection Bureau v. Whitman,* 196 Wis. 472, 220 N. W. 929, that the legislature has the power in the creation of subordinate boards to limit their jurisdiction and prescribe their methods of procedure. If when created such boards exceed their powers or do not proceed in accordance with the established law, they may be kept within their jurisdiction and compelled to proceed in accordance with law by the exercise of the judicial power vested in the courts.

To what extent if at all may the board properly inquire

into the investments which a broker applicant intends to offer to the public? In the so-called Blue Sky Law, ch. 189, Stats., it is provided that securities shall be separated into two classes: (a) and (b), class (a) including those supposed to be sound in character and class (b) those more doubtful. We find no such provision in the act under consideration. The sole question to be considered by the board is the competency and trustworthiness of the applicant. Should the board, then, never inquire into the investments which a broker applicant proposes to offer to the public? It is a matter of common knowledge that fraudulent securities amounting in the aggregate to vast sums are annually offered to and purchased by credulous investors. Such investments are of such a character that the mere fact that a broker deals in them causes him to be regarded by the business world as dishonest and untrustworthy. If investments which a broker proposes to offer to the public are of such fraudulent, doubtful, and dubious sort as would lead reasonably to the conclusion that the person offering them was a willing party to the fraudulent scheme and so wanting in the instincts of honesty and fair dealing as to make him untrustworthy, no doubt the application might be denied for that reason. Under such circumstances the application would not be denied because of the speculative nature of the security, but because of the fact that the broker dealt in a fraudulent security indicated a defect in his character. The board reached no such conclusion in this case. It goes out of its way to say that its determination should not lead to the conclusion that the project is not legitimate, but merely finds that it is so speculative that in its opinion Wisconsin investors should not be permitted to buy it. Such a finding does not support the determination of the board, and the board having denied the license for that reason, it acted beyond and in excess of its statutory powers and not according to law.

The trial court reached substantially the same conclusion as to the scope of the statute as that reached by this court, but was of the opinion that there was some evidence in the record which under the rule applicable in *certiorari* cases was sufficient to sustain the findings of the board. The question of whether or not there is any evidence in the record which will sustain the findings of a subordinate body exercising *quasi*-judicial power is not the only question raised in *certiorari* proceedings. It is true that upon the return to a writ of *certiorari* issued to an inferior court the reviewing court will consider nothing but the matter of jurisdictional errors for the reason that other errors may be corrected by writ of error or appeal. From an early day it has been the law of Wisconsin, however, that where a writ of *certiorari* is issued to a subordinate tribunal exercising *quasi*-judicial powers not proceeding according to the course of the common law and from the determination of which there is no appeal, the reviewing court will examine the record to ascertain not only whether the subordinate officer or board kept within its jurisdiction but also to see whether or not he or it acted according to law. *State ex rel. Moreland v. Whitford,* 54 Wis. 150, 11 N. W. 424; *State ex rel. Wood County v. Dodge County,* 56 Wis. 79, 13 N. W. 680; *State ex rel. Supervisors v. Nelson,* 57 Wis. 147, 15 N. W. 14; *State ex rel. Peart v. Wisconsin Highway Comm.* 183 Wis. 614, 198 N. W. 753.

The act requires that before the board denies or revokes a license there must be a complaint, notice of hearing, opportunity to be heard, the evidence reduced to writing, findings made thereon, and a determination. The power exercised by the board is therefore undoubtedly *quasi*-judicial in its nature and so reviewable by *certiorari*. The statement in the *Durham Corporation Case* to the effect that "The law is too well settled to require citation of authorities that

*certiorari* to a *quasi*-judicial board brings up for review only jurisdictional errors," is too narrow if the word *jurisdictional* is used in its ordinary sense. In one sense, of course, a board that acts, and does not act according to law, acts beyond its jurisdiction, but it is not without jurisdiction in the sense that it has no power to act. It was not intended in the *Durham Corporation Case* to restate the law but to state the duties of the court with reference to findings of fact in *certiorari* proceedings.

It is urged in this case that the function of the writ of *certiorari* is enlarged by the terms of the act in that it provides (sec. 136.15, in the margin), "but the action of the board shall stand until otherwise directed by said court or by the supreme court of the state upon appeal." It is considered that this language does not enlarge the functions of the writ so far as the review is concerned, but provides that the determination of the board shall not be stayed by the writ. No doubt this provision was inserted so that in case the board revokes a license upon a hearing the order of revocation will not be stayed by the issuance of the writ. We discover no legislative attempt to enlarge the powers of the reviewing court in *certiorari* proceedings under the statute. The evidence which the trial court considered sufficient to sustain the determination of the board is set out in the second subdivision of the findings entitled "Methods of sale." Neither in that finding nor elsewhere is there any indication as to whether or not the board considered the evidence so summarized warranted a finding of untrustworthiness of the applicant. If the board acting within the law and not considering matters improperly before it had concluded that this evidence indicated such untrustworthiness of character as to require that it deny the applicant's license under the rule in *certiorari* proceedings, we should be obliged to sustain the finding. The statute requires evidence

to be produced before the board and findings to be made and the determination of the board thereon. The findings must therefore support the determination. The legislature could have had no other purpose in requiring findings to be made. In this case the findings do not support the determination. The determination of the board is so colored and affected by its misinterpretation of the act as to the extent of its own powers as to make it impossible for the court to say that the applicant has had the hearing, findings, and determination to which under the law it is clearly entitled.

It is considered, therefore, that the judgment of the circuit court should be reversed, with directions to the trial court to reverse the determination of the board and to remit the record to the board for the purpose of having the board make findings and a determination in accordance with the law. *Panama Mail Steamship Co. v. Vargas,* 281 U. S. 670, 50 Sup. Ct. 448, No. 425 October Term 1929, decided June 2, 1930; *Lutcher & Moore L. Co. v. Knight,* 217 U. S. 257, 268, 30 Sup. Ct. 505; *People ex rel. Hempstead v. Tax Comm'rs,* 214 N. Y. 594, 108 N. E. 913.

*By the Court.*—It is so ordered.