STATE EX REL. HEFFERNAN, Respondent, vs. BOARD OF FIRE & POLICE COMMISSIONERS, Appellant.

*March 15—May 1, 1945.*

*Robert J. Cunningham,* attorney, and *O. A. Oestreich* of counsel, both of Janesville, for the appellant.

For the respondent there were briefs by *Cleland P. Fisher,* attorney, and *George Murwin* and *Raymond C. Fett* of counsel, all of Janesville, and oral argument by *Mr. Fisher* and *Mr. Murwin.*

WICKHEM, J.    Plaintiff, Heffernan, was captain of the police in Janesville. On July 20, 1942, a complaint alleging twenty-two separate items of misconduct by Heffernan was presented to the Board of Police & Fire Commissioners of Janesville for investigation and determination. A formal hearing was had in which voluminous testimony was offered

and the board found Heffernan guilty of misconduct in respect to seventeen items or counts established by the evidence. The other five counts were not supported by the offer of any evidence. Since one of the questions in this case relates to the sufficiency of the findings it will be convenient to set forth at this time what purport to be the findings of the board :

"For nearly a year, complaints arising within the police department have been the subject of inquiry before this commission. Charges of subversive conduct have been sustained. Several officers have resigned because of misconduct. Charges of incompetency and inefficiency aimed at the chief of police have been fully investigated and found to be without merit. Extensive public hearings have been held. These various hearings and matters that have been brought before the commission disclose that there has been over a period of years, distrust and dissension, the creation of groups or cliques and personal friction which has characterized the relationship of officers toward one another, and toward their superiors.

"We have said before, and we say again, that the chief of police must have the loyal support of every member of his department. To operate efficiently, all officers must co-operate with him, and with each other. There is no room in the police department for dissenters and troublemakers. Every officer must obey the rules and regulations of proper authority and orders of the chief. Such obedience is mandatory. Unless it can be rendered wholeheartedly and petty jealousies subordinated to honest and enthusiastic co-operation by every member of the police force, we suggest that for the good of the service and the public, that they sever their relations with the department. . . .

"Much of the present difficulties in the police department began several years ago, when the present chief of police was appointed. The respondent herein was an unsuccessful candidate for the position at that time. Concurrently with the chief's appointment, the respondent began a course of conduct evincing disloyalty, distrust and a willingness to embarrass the chief in his duties.

"Without here reviewing the evidence in full, it is sufficient to say that we are satisfied that the respondent has violated

police regulations and has carried on a course of conduct which has been subversive and calculated to disrupt and seriously affect the good morale of the police department. Undesirable personal differences and the resultant existence of followers has produced a condition intolerable for the good of the department."

The order of the board was that Heffernan be demoted from captain to patrolman and suspended for a period of one year from date of this order. Heffernan took an appeal under sec. 62.13 (5) (h), Stats., to the circuit court which determined the order appealed from to be reasonable and held that that was the limit of the court's jurisdiction to review. Thereupon Heffernan petitioned this court (*Petition of Heffernan,* 244 Wis. 104, 11 N. W. (2d) 680) for a writ of *mandamus* to compel the circuit court to consider and decide jurisdictional questions claimed to be involved. This court declined to issue the writ and stated that the appeal was limited in its scope to the issues indicated by the trial court but that Heffernan was not precluded by taking the appeal from bringing *certiorari.* At this stage of the proceedings it will be useful to state the respects in which each party was dissatisfied with the determination of the circuit court.

The Board of Police & Fire Commissioners takes the position that the circuit court erred in reversing the board's order which both suspended Heffernan and also reduced his rank. The circuit court held that under the statute the power of the board was exhausted when one of three alternative disciplinary actions was taken. The cross-appeal is principally based upon the assertion that the Board of Police & Fire Commissioners committed jurisdictional error by failing to make specific findings of fact. In addition to this, Heffernan contends that certain exclusions of evidence amounted to jurisdictional error; that certain statements by Heffernan which were the foundation for some of the changes were within the constitutional guarantees of free speech, and that certain charges made

and claimed to have been established against Heffernan did not amount to subversive conduct. The subissues need not be stated here but will be considered and disposed of in the course of the opinion to the extent that they appear to be material.

We now proceed to examine defendant's principal contention, namely, that the trial court erred in holding that under sec. 62.13 (5) (d), Stats., the board may suspend, reduce in rank, or remove, but that it may not both suspend and reduce in rank. The words of the statute are :

". . . If the board shall determine that the charges are sustained, the accused, by order of the board, may be suspended, reduced in rank, or removed, as the good of the service may require."

It appears to us that the words of the statute are so plainly and clearly put in the alternative that this court may not, without usurping the function of the legislature, interpolate or depart from the language of the statute under the pretext of construction. In our judgment the section is not fairly open to two or more meanings, and the trial court was plainly right in holding that it was within the power or jurisdiction of the board to impose only one of the three alternative penalties provided for by the section.

The next question is whether, having applied two penalties when only one was within its jurisdiction, the board committed jurisdictional error which rendered void its entire order. The trial court was of the view that, having provided first for demotion, the board thereby exhausted its jurisdiction, and that the subsequent penalty of suspension was to be treated as void and stricken as surplusage, leaving the valid part of the order standing. There is some merit to the claim that this is an artificial approach to the problem. However, in *State ex rel. Sullivan v. Benson,* 211 Wis. 47, 247 N. W. 450, and in *State ex rel. Lang v. Civil Court,* 228 Wis.

411, 280 N. W. 347, it was held that the valid portion of a judgment which was within the jurisdiction and which preceded the void part of the judgment might stand. It is true that one of these was a *mandamus* action and the other an application for writ of prohibition. However, the question in each case was one of jurisdiction. In the case of *Hurlbut v. Wilcox,* 19 Wis. \*419, there was an application for writ of *certiorari* to a justice of the peace. In that case the statute provided that the amount of costs should not exceed $15 and the amount taxed was $26.54. This court permitted the judgment for damages to stand and reversed for costs on the theory that damages and costs are distinct parts of the judgment and that in *certiorari* a court may quash proceedings in part and affirm in part. See also *Shafer v. Hogue,* 70 Wis. 392, 35 N. W. 928, for an extensive discussion of the rule in *certiorari,* where the court states the rule to be that where the several parts of proceedings are connected together and dependent upon each other, the whole must be quashed, but that proceedings which are independent and disconnected with each other may be quashed in part by deleting that which is erroneous and without jurisdiction, and affirming the remainder.

In this case, it appears to us that the suspension and demotion are not dependent upon each other. The board intended to do both, and hence it is fair to assume that they intended to apply one of the penalties if they could not apply both. Since they first mentioned the demotion, which is the heavier penalty, it is a fair assumption that that was the important part of the order and that in any case they would have inflicted that punishment. Our view of the foregoing matter makes it unnecessary for us to discuss several subsidiary issues having to do with the suspension. For example, it is contended that the provisions for suspension in sec. 62.13 (5) (d), Stats., are too indefinite to be valid, and that in any event they are made subject to the rule-making power of the board which in its regulations has limited suspensions to a period of sixty

days.  Since the order of suspension has dropped out of this case it is wholly unnecessary to consider this question.

It is finally contended by defendant that in the absence of evidence to the contrary we should assume that the board intended to and did make the order in accordance with the statutory provisions, and that it reduced respondent in rank on one or more charges established by the evidence and suspended him on others.  We are unable to sustain this contention because the board simply made general findings of subversive and insubordinate conduct.   While the findings are sufficient to establish certain ultimate facts, a point that will be dealt with later, the record furnishes no basis for the conclusion that the board based penalties on different findings.   There is no merit to this contention.

The first contention of Heffernan is that jurisdictional error was committed by the board because its determination failed to satisfy a statutory requirement that findings be filed.   The applicable statutory provisions are sec. 62.13 (5) (d) and sec. 62.13 (5) (e).   These sections provide as follows:

"62.13 (5) (d)   If the board shall determine that the charges are not sustained, the accused, if he has been suspended, shall be immediately reinstated.   If the board shall determine that the charges are sustained, the accused, by order of the board, may be suspended, reduced in rank, or removed, as the good of the service may require.

"62.13 (5) (e)   Findings and determinations hereunder and orders of suspension, reduction, or removal, shall be in writing and, if they follow a hearing, shall be filed within three days thereof with the secretary of the board."

It is contended in the first place that findings are required, and in the second place, that the findings of the board are not sufficiently specific to satisfy the statutory requirements.   It is pointed out that while the twenty-two charges are quite specific and are to the effect that Heffernan did this or that

act claimed to be subversive to discipline, the findings which have heretofore been set forth do not constitute a conviction of any one specific charge. We are unable to assent to this contention. While many statutes dealing with delegation to administrative boards of fact-finding functions do specifically require findings, that is not true of sec. 62.13, Stats. Par. (d) simply implies that there shall be a determination that charges are or are not sustained. Par. (e) simply requires that such findings, determinations, and orders of the board as shall be made shall be in writing and shall be filed, but we discover no specific requirement that findings, as distinguished from a mere determination of guilt or innocence, be made. Assuming, however, that findings are required, the board should limit its findings to ultimate facts and not extend them to include evidentiary facts. The twenty-two separate acts by Heffernan which constituted the charges are evidentiary. The ultimate fact is his guilt or innocence of conduct subversive to the good order and discipline of the department of police, and this is a conclusion of fact and not one of law; it is arrived at by a judgment whether such of the specific acts as were committed did in fact tend to undermine the good order and discipline of the department. When the board stated that "concurrently with the chief's appointment, the respondent began a course of conduct evincing disloyalty, distrust and a willingness to embarrass the chief in his duties" it found in effect the ultimate fact of subversive conduct, because notice can be taken that such a course of conduct is destructive of discipline and morale. When it found that he had "carried on a course of conduct which has been subversive and calculated to disrupt and seriously affect the good morale of the police department" the board directly found an ultimate fact in the case. These ultimate facts are based on the evidentiary facts set up in the charges. It is suggested by the trial court that more specific findings might have been asked for and had if Heffernan had requested them. We doubt

this but see no point in discussing the matter upon a hypothetical basis. We are certain that the foregoing were findings of ultimate fact, and since the court upon the statutory appeal held that there was evidence to support them, there is nothing further that we may properly consider in *certiorari* proceeding.

The next contention is that the exclusion by the board of certain evidence constituted jurisdictional error. Extensive offers of evidence were made by Heffernan and it would unduly extend this opinion to set forth and examine them in detail. Counsel for Heffernan has included in his brief an excellent summary of the probative tendencies of the evidence offered and we shall accept this as an accurate statement. This evidence falls under four heads: (1) Evidence offered in support of the truthfulness of a statement charged to Heffernan as subversive conduct that the police chief was not quite up to the job as chief. The testimony offered tended generally to show bad internal conditions in the police department, flagrant violations of the rules by the officers, immorality, drunkenness, misuse of the squad car and other offenses by members of the force; (2) evidence tending to show failure on the part of the chief to take proper and timely disciplinary action against officers whom he knew or should have known were violating regulations; (3) evidence to the effect that conditions in the department were matters of common knowledge in the city; that they were known to the chief or should have been known to him in the proper exercise of his duties; (4) evidence showing the motives of the chief in instituting proceedings against plaintiff.

Heffernan asserts that this evidence was material and important in relation to the issues before the board for the reason that it showed that he was seeking in good faith to improve the morale, discipline, and efficiency of the department, and that the real cause of the bad morale and discipline was the failure of the chief to discover and put an end to flagrant mis-

conduct by officers; that Heffernan was not actuated by malice but by a sincere effort to have the abuses corrected. Heffernan contends that the evidence is of sufficient importance that its exclusion constitutes a jurisdictional defect in the proceedings. Two cases are cited in support of this view. *Ekern v. McGovern,* 154 Wis. 157, 142 N. W. 595; *State ex rel. Augusta v. Losby,* 115 Wis. 57, 63, 90 N. W. 188. In the *Losby Case,* which was an action of *certiorari,* this court said:

"If a board, in reaching a determination, is required to act upon evidence, and it acts without evidence, or any evidence warranting the result reached in any reasonable view of it, or if it is required to receive evidence and refuses to do so, it commits a clear violation of law—a jurisdictional error—and its final determination may be challenged by writ of *certiorari* as void on that ground."

In the *Ekern Case, supra,* the court treats as a jurisdictional defect in the proceedings there involved the failure to afford a reasonable opportunity to present evidence. That was a case in which a hearing was closed while appellant's most important witnesses were present and waiting to testify.

These were cases of failure in a substantial sense to grant any hearing at all. Ordinarily the exclusion or rejection of evidence is error and that is of course not redressable in *certiorari.* It is to be noted that there is a distinction between error in admitting and error in rejecting evidence. We can presently think of no case in which the erroneous admission of evidence can constitute anything but error. The rejection of evidence, however, if it is complete enough and important enough, may amount to failure to accord due process or a hearing.

We are satisfied that there was no such failure here. Since Heffernan was permitted to offer all the evidence that the board considered relevant to the inquiry, and since the board heard this offer in detail and then ruled in good faith upon its

relevancy, there certainly was no arbitrary attempt to deny Heffernan a hearing. However, while we do not approach the merits of matters involving error, it may not be amiss in view of the holdings in the *Ekern* and the *Losby Cases, supra,* to consider how substantial and relevant the evidence offered was in order that we may see whether there was substantial impairment of the right of Heffernan to present his case and to have a hearing. Fundamentally, what Heffernan was trying to show was that there were bad conditions in the department; that these were generally well known in the city; that the chief knew or should have known of them and that since he failed to act he was not up to his job and Heffernan's various statements to that effect and his other actions were good-faith efforts to improve the efficiency of the department.

The board rightly took the position that this evidence had no bearing upon the question whether Heffernan was guilty of conduct destructive of departmental discipline and morale. Assuming his entire good faith and the truth of the charges that he made against the chief and other officers, Heffernan's methods were necessarily and fundamentally subversive of discipline. Instead of presenting the charges to the chief or board, the record contains evidence which the board was entitled to believe, that he sought to undermine the authority of the chief by criticizing him to other officers and by other means, with the purpose and effect of increasing confusion and difficulty within the department. The most that the evidence offered could show was that Heffernan did all this with the purpose of so demoralizing the department that the chief would be supplanted and that under better leadership efficiency and good conduct would ultimately be achieved. This is the one sort of activity that cannot be permitted to a subordinate if the department is to function at all. It usurps the function of the person in whom responsibility has been vested by orderly processes. However worthy Heffernan's motives or ultimate objectives, his methods could not be tolerated. It follows that

the evidence offered would not constitute a defense, and its exclusion did not interfere with Heffernan's right to a hearing. There was no jurisdictional defect in this regard.

It is contended by Heffernan that such charges as involved the expression of opinions by him cannot be sustained without infringing his rights under constitutional provisions guaranteeing him the right of free speech. We are unable to assent to this. The comments and criticisms involved in the charges tended directly to undermine the authority of the chief and the discipline of the department. They did not constitute an appeal to those over the chief who might act upon complaints. Certainly, it is within the police power to protect the discipline of the police department by requiring that its employees may not, through the exercise of the function of speech, so undermine the discipline and upset the morale of the department. It is hardly necessary to point out that this case had none of the aspects of a labor dispute.

While the case does not bear specifically upon any point raised here, we cite as an excellent exposition of the legislative intent and philosophy in respect of police and fire departments the case of *State ex rel. Davern v. Rose,* 140 Wis. 360, 122 N. W. 751.

The foregoing disposes of all matters essential to the determination of this controversy and leads to the conclusion that the judgment of the trial court must be affirmed.

*By the Court.*—Judgment affirmed.