STATE EX REL. BALL, Respondent, v. McPHEE, Director-Secretary, and another (Board of Regents of State Colleges), Appellants.*

*January 5—February 3, 1959.*

* Motion for rehearing denied, without costs, on June 26, 1959.

196

For the appellants there were briefs by the *Attorney General* and *Warren H. Resh,* assistant attorney general, and oral argument by *Mr. Resh.*

For the respondent there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and *Crawford, Crawford & Cirilli* of Superior, and oral argument by *Carroll Metzner* and *Arthur A. Cirilli.*

A brief was filed by *Goldberg, Previant & Cooper,* attorneys, and *David Leo Uelmen* of counsel, all of Milwaukee, for the Wisconsin Federation of Teachers, as *amici curiae.*

A brief was also filed by *Henry E. Butler, Jr.,* of Washington, D. C., legal counsel for the National Education Association, as *amicus curiae.*

Currie, J. We are called upon in this case to consider important questions arising under the Teachers' Tenure Law, sec. 37.31 (1), Stats., applicable to faculties of the state colleges. This statute reads as follows:

"All teachers in any state college shall be employed on probation and after successful probation for four years, the employment shall be permanent, *during efficiency and good behavior,* provided, that the teachers having taught four years or more in any such college shall be deemed to have served their term of probation. No teacher who has become permanently employed as herein provided, by reason of four or more years of continuous service, shall be discharged except for cause upon written charges. Said charges shall after ten days' written notice thereof to such teacher, and upon such teacher's written request, be investigated, heard and determined by the board of regents of state colleges, whose action and decision in the matter shall be final. The term 'teachers' as used in this section shall include all persons engaged in teaching as their principal occupation but shall not include the president or acting president of any state college." (Italics supplied.)

While additional questions are raised in the briefs of counsel, we deem that the following three issues are all that need be considered in order to properly dispose of this appeal:

(1) What is the scope of the court review in certiorari of the board's action in sustaining the discharge of a teacher having tenure under sec. 37.31 (1), Stats.?

(2) Was the action of the board fatally defective because of the failure to make proper findings of fact?

(3) Was Dr. Ball denied a fair hearing so as to require that an entirely new hearing be conducted by the board as a condition precedent to a valid discharge?

*Scope of Review on Certiorari.*

The brief of the attorney general contends that when review is sought by certiorari of a decision of an administra-

tive agency, such as the defendant board in the instant case, the sole question is whether the agency acted within its jurisdiction. We are satisfied that this is too narrow an interpretation of the scope of such review. This is borne out by the declaration of this court in *State ex rel. Progreso Development Co. v. Wisconsin R. E. Brokers' Board* (1930), 202 Wis. 155, 168, 231 N. W. 628, that a reviewing court in certiorari will inquire "to ascertain not only whether the subordinate officer or board kept within its jurisdiction but also to see whether or not he or it acted according to law."

Construing the phrase "acted according to law," we deem the word *"law"* means not only any applicable statutes but also the common-law concepts of due process and fair play and avoidance of arbitrary action. As Mr. Justice FRITZ well stated in *State ex rel. Madison Airport Co. v. Wrabetz* (1939), 231 Wis. 147, 153, 285 N. W. 504, "the cardinal and ultimate test of the presence or absence of due process of law in any administrative proceeding is the presence or absence of the 'rudiments of fair play long known to our law.' "

The Minnesota court in *Oliver Iron Mining Co. v. Commissioner* (1956), 247 Minn. 6, 10, 76 N. W. (2d) 107, 111, recently stated in a certiorari case that "it is well settled that, . . . this court will go no further than to determine: (1) Whether the board kept within its jurisdiction; (2) whether it proceeded on correct theory of the law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question."

In *Elwood v. State ex rel. Griffin* (1932), 203 Ind. 626, 180 N. E. 471, 473, 81 A. L. R. 1027, the Indiana court had before it a teachers' tenure statute similar to sec. 37.31(1), Stats., which provided that the school board's action in discharging a teacher "shall be final." In a mandamus proceed-

ing brought in behalf of a lady teacher who had been discharged because she had married, the court ordered reinstatement on the ground that such fact of marriage was not a statutory ground for discharge. In discussing the scope of review the court stated (203 Ind. 631, 180 N. E. 473):

"If a school board dismisses a teacher for a cause named in the statute, such action is conclusive and is not subject to review by the courts, unless the board in taking the action *acted in bad faith, arbitrarily, corruptly, fraudulently, or in gross abuse of its discretion.*" (Emphasis supplied.)

This same court later decided *Peru v. State ex rel. Youngblood* (1937), 212 Ind. 255, 7 N. E. (2d) 176, arising under the same tenure statute, in which a discharged teacher sought reinstatement by mandamus, and the trial court's judgment of reinstatement was reversed. The court found that the school board had complied with all the requirements of the teachers' tenure statute in making the discharge, and concluded with this statement (212 Ind. 268, 7 N. E. (2d) 181):

"Under the circumstances here presented, the jurisdiction of the trial court was limited to a consideration of whether or not there was *substantial evidence* before the board to support the charges against the appellee." (Emphasis supplied.)

We deem that the foregoing quotations from the cited court decisions, which bear on the scope of court review in certiorari or mandamus of a decision of an administrative agency, merit our approval and are applicable to the instant appeal.

*Findings of Fact.*

Sec. 227.13, Stats., which is part of the Wisconsin Administrative Procedure Act, provides:

"Every decision of an agency in a contested case shall be in writing accompanied by findings of fact and conclusion

of law. The findings of fact shall consist of a concise and separate statement of the ultimate conclusions upon each contested issue of fact without recital of evidence."

There can be no question but that the mere adoption by the defendant board of a resolution that the charges against Dr. Ball "are sustained" does not comply with the requirements of this statute. The more-difficult question is whether such statute is applicable to board action taken pursuant to sec. 37.31 (1), Stats., in discharging a teacher.

Ch. 227, Stats., is not limited to providing a method of review of administrative agency decisions, but prescribes the procedure which such agencies must follow in hearing and determining contested matters. The definition of "agency" contained in sec. 227.01, Stats., makes it clear beyond dispute that the defendant board is an administrative agency within the meaning of the Administrative Procedure Act. There is no express provision to be found in the act which excludes the application of sec. 227.13 to the instant contested proceeding. Neither is there any inconsistency between the provision of sec. 37.31 (1) that the "Said charges shall . . . be . . . heard and determined, . . ." and the requirement of sec. 227.13 with respect to findings of fact and conclusions of law. Sec. 227.15, which deals with judicial review of agency decisions, does exclude from such review the decisions of certain named agencies but not those of the defendant board. However, the legislature can, by a specific statute not embodied in ch. 227, Stats., exclude other agency decisions from review under the Administrative Procedure Act. We are inclined to agree with the attorney general that the provision in sec. 37.31 (1) that the decision of the defendant board shall be final, does remove its decisions from judicial review under sec. 227.15.

Therefore the question, as to whether the findings-of-fact requirements of sec. 227.13, Stats., are applicable to the instant contested proceeding before the defendant board,

boils down to the issue of whether such requirements can be deemed to serve any useful purpose in orderly administrative-agency procedures, other than for purposes of judicial review. If they do, we have no right to assume that the legislature did not intend them to apply to all administrative-agency decisions made in contested proceedings in the absence of an express statute so stating.

The late Judge JEROME FRANK forcibly pointed out the important purpose served in the proper administration of justice, from the standpoint of the trier of facts, of the requirement that findings of facts be filed. *United States v. Forness* (2d Cir. 1942), 125 Fed. (2d) 928, 942, certiorari denied, 316 U. S. 694, 62 Sup. Ct. 1293, 86 L. Ed. 1764. We quote Judge FRANK's words as follows (125 Fed. (2d) 942):

"It is sometimes said that the requirement that the trial judge file findings of fact is for the convenience of the upper courts. While it does serve that end, *it has a far more important purpose*—that of evoking care on the part of the trial judge in ascertaining the facts. For, as every judge knows, to set down in precise words the facts as he finds them is the best way to avoid carelessness in the discharge of that duty: Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper. The trial court is the most important agency of the judicial branch of the government. . . ." (Emphasis supplied.)

One of the country's leading authorities in the field of administrative law is Prof. Kenneth Culp Davis of the University of Minnesota Law School faculty. In 2 Davis, Administrative Law Treatise, p. 446, sec. 16.05, it is stated that a practical reason for requiring findings of fact "is that findings help protect against careless or arbitrary action" on the part of administrative agencies. In support of this thesis this author quotes from the opinion of Judge FRANK in *United States v. Forness, supra.*

The United States court of appeals for the District of Columbia, in *Saginaw Broadcasting Co. v. Federal Communications Comm.* (1938), 96 Fed. (2d) 554, 559, certiorari denied (1938), 305 U. S. 613, 59 Sup. Ct. 72, 83 L. Ed. 391, stated that the requirement, that administrative agencies make findings of fact, is to guarantee "that cases shall be decided according to the evidence and the law, rather than arbitrarily or from extralegal considerations" and "to insure against star-chamber methods."

We find no incompatibility between secs. 227.13 and 37.31 (1), Stats., and, therefore, conclude that the provisions of sec. 227.13 are applicable to the instant contested proceeding decided by the defendant board. The failure of the board to make proper findings of fact requires that the proceeding be remanded to the board for further action.

The brief of the attorney general relies upon *State ex rel. Heffernan v. Board of Fire and Police Comm.* (1945), 247 Wis. 77, 18 N. W. (2d) 461, as holding that no findings of fact were required to be entered by the board. It is not in point because the administrative board in that case was a municipal, and not a state, agency. Therefore, sec. 227.13, Stats., did not apply thereto.

In the absence of required findings of fact, this court should not grope around in the dark to ascertain if there is evidence which will sustain any of the 28 specifications of charges. This is because we have no way of knowing which of such specifications the board deemed were sustained so as to justify the discharge. Some were not sustained. Other specifications, even if true, would not qualify as either inefficiency or bad behavior, the only two statutory grounds on which a discharge legally could be based.

We wish to take sharp issue with one of the contentions advanced by the attorney general. Such contention is that the statute vests the sole discretion in the board to determine for

itself what conduct on the part of a teacher constitutes good cause for discharge. Such an interpretation of the statute would tend to completely destroy its obvious objective of assuring security of tenure to a teacher, who has completed his four-year probationary period. The statute guarantees such tenure *"during efficiency and good behavior."* It necessarily follows that any discharge for a cause that does not qualify as inefficiency or bad behavior is contrary to law and reviewable by the courts in certiorari.

We do not deem that it behooves this court to point out the various specifications of charges filed against Dr. Ball which do not qualify as legal grounds for discharge. This is because, if the matter is retried and proper findings of fact are entered, the board may determine that the questionable specifications of charges have not been proved. However, for purposes of illustration, and as a guide to the board in the future, we will point out two instances of specifications of charges which, even if proved, would not constitute legal grounds for discharge.

One of such objectionable specifications is that Dr. Ball "attempted to persuade graduates not to accept northern Wisconsin teaching jobs." Even if true, such conduct does not constitute either inefficiency or bad behavior.

Another specification, considered in the light of the evidence presented in support thereof, is equally defective. Such specification read: "Attacked graduate program of college." The evidence in support of such specification was that Dr. Ball voiced opposition to the graduate-course program of the college because graduate students were permitted to take academic courses which were offered as part of the course for the Bachelor's degree. Surely a teacher in a state college is entitled to some academic freedom in criticizing school programs with which he is in disagreement. Such acts of criticism do not qualify as either inefficiency or bad behavior.

*Denial of a Fair Hearing.*

(a) *Blanketing in of the transcript of the Superior investigation.* Immediately before the commencement of the hearing at Madison on May 25, 1957, Magnusen, as the board's designated presiding officer, informed counsel for Dr. Ball that the transcript of the Superior investigation was going to be placed in the record, and the witnesses who there testified for President Hill were merely going to be called and asked whether the statements made by them at Superior were true and correct. With reference to such declaration by Magnusen that this was going to be done, counsel for Dr. Ball, at the opening of the hearing, entered the following statement on the record:

"We heard for the first time this morning, a few minutes ago, that the investigation record at Superior will not be repeated here this morning, that Mr. Hill's witnesses will be put on the stand and asked whether the testimony given under oath today would be the same as that given in Superior, and then we will have the opportunity of cross-examination. I just want the record to show that we did not know that before. We have no objection to that.

"Our only problem that I'd like to express to the board is that the hearing in Superior, not being under oath, and held in an informal manner, is replete with all sorts of hearsay. A person would get up and say that so-and-so told him that so-and-so told him that, and we feel that such testimony would not be admitted in a court of law, and in view of the seriousness of this matter as far as Dr. Ball is concerned, we think it should not be admitted here. . . .

"Likewise the testimony which is not sworn testimony in that investigation is full of statements such as 'I feel,' 'it is my opinion,' 'it was my impression,' and things like that that likewise are matters for this board to determine and not based on what someone else's opinion or impression is. That is usurping the jurisdiction of the members of the jury, as we say in court language, and that is what you gentlemen on the board are here for."

In response to such statement, Magnusen stated that hearsay evidence and opinion evidence appearing in the transcript of the Superior investigation would be disregarded by the board. However, there is nothing in the record to indicate that Magnusen, as presiding officer, ever ruled as to which parts of the evidence in the Superior transcript were hearsay and opinion evidence. We find much of the same was most prejudicial to Dr. Ball. After the hearing adjourned on May 25th the next action of the board of record is the voting of the resolution sustaining the charges at the June 17th meeting after approximately an hour's deliberation. The brief of the attorney general asserts that the members of the board had been furnished with copies of the transcripts of the Superior investigation and Madison hearing prior to the June 17th meeting.

In all likelihood the members of the board did read such transcripts. In doing so they read the Superior transcript replete with hearsay and opinion evidence without any ruling to guide them as to which parts were to be disregarded. Apparently only one other of the 10 board members besides Magnusen is an attorney. No more need be said to indicate the great prejudice which might have resulted to Dr. Ball from the blanketing into the record of the Superior transcript. Such procedure vitiated against commonly accepted concepts of a fair trial.

The brief of the attorney general asserts that counsel for Dr. Ball waived any right to object to such procedure because in the afore-quoted statement made by him to the board there was contained the words, "We have no objection to that." It is because of such contention that we have set forth counsel's statement at length. A reading of such statement in its entirety, without taking words out of context, conclusively establishes to our satisfaction that counsel did specifically object to the parts of the Superior transcript which constituted hearsay and opinion evidence.

Furthermore, we have serious doubts as to whether it was necessary for Dr. Ball's counsel to object to the announced action of the board blanketing in the Superior transcript on pain of being precluded from raising the issue here. Counsel was placed in the unenviable position of not wishing to offend the board then acting as a trial tribunal and yet at the same time preserving the rights of his client. Lawyers are sometimes faced with a like dilemma in the trial of a lawsuit when the trial judge asks an objectionable question of a witness. However, we find it unnecessary to the disposition of this appeal to pass on such question.

(b) *Failure to assure Dr. Ball's witnesses against reprisals.* Two of the faculty members of the college who testified in behalf of Dr. Ball at the Superior investigation were Dr. Loop and Dr. McKee. They expressed fear of reprisals being exacted against them if they were to testify favorably to Ball, and the board failed to assure them against such action. The evidence before us indicates that President Hill was not one to brook any opposition to his policies by members of his faculty. Under such a situation we deem that the principles of a fair trial required the board to assure these two witnesses of protection against reprisals. On this issue we quote with approval from the memorandum opinion of the learned trial court:

"One of the most-serious aspects of the Superior hearing is the implied pressures which in the court's mind served to coerce witnesses. For example, all of the administration's witnesses were apparently lined up in advance. They had been requested to testify and exhibited no fear whatever for reprisals resulting from the testimony. In other words, they were on the right side. Ball's witnesses, to the contrary, were at a decided disadvantage for in effect they were sticking their necks out. Their testimony was pro-Ball and thereby antiadministration. They were there only at Ball's behest and not, apparently, because the board was searching for the facts.

"Under such circumstances the board had an absolute duty to insure each of Ball's witnesses that no administration reprisals would be permitted by way of salary-raise denials or otherwise because such witnesses dared to speak the truth. This the board utterly failed to do. For example, note the testimony of Dr. Loop at page 115 of the Superior transcript as follows:

" 'Dr. Loop: May I ask what position is a man in who might care to take issue with some of these charges?

" 'Mr. McIntyre: You are perfectly justified in doing so. They will be presented at the hearing.

" 'Dr. Loop: Is there any protection against reprisals?

" 'Mr. McIntyre: There is no protection we can offer against reprisal except protection under tenure and also right of appeal to the board.

" 'Dr. Loop: For example, salary raises are customary, as you know better than I, and the man who takes issue with the president's charges here, would he be protected against being left out of a raise? What would be the situation there?

" 'Mr. McIntyre: I couldn't answer that.

" 'Mr. Magnusen: That would be presupposing he is going to get the raise.

" 'Dr. Loop: Where you have a good percentage of the faculty members getting raises over the years.

" 'Mr. Magnusen: 90 per cent get raises.

" 'Dr. Loop: I understand. That is the question, when a man comes in here before the board, to know just where he is going to be. You can readily understand why one doesn't feel inclined to lay himself wide open unless you feel that there is some protection.

" 'Mr. Magnusen: You are not obligated to testify. The only reason you were called is that Dr. Ball suggested you might have a statement to make on the charges. We don't ask you to testify if you don't wish to do so. If you testify you do it voluntarily and of your own free will. We are not in position to offer anybody anything pro or con.

" 'Dr. Loop: I'm not asking for any particular offer. I am merely wanting to know how a faculty member can come into a situation of this sort and avoid that problem.'

"Finally Dr. Loop concluded at page 117, 'You understand it will take a brave man to stick his neck out at this point but I will do it.'

"The testimony of Dr. McKee, one of Dr. Ball's witnesses, is also illuminating on this point. We note from pages 124, 125 of the transcript of the Superior hearing:

" 'Dr. McKee: I'd like to raise the question of immunity. How can I be sure that comments I make to you will not mean future retribution salary-wise and in other ways of that sort?

" 'Mr. McPhee: This is all a public record.

" 'Dr. McKee: I am not thinking of the public. I am thinking of the local administration.

" 'Mr. McIntyre: On what basis?

" 'Dr. McKee: Because it's been found on the campus before. This campus is filled with fear. Faculty and students. Faculty members have said to me, "Why not co-operate 100 per cent? It's profitable."

" 'Mr. McPhee: That's quite a serious charge.

" 'Dr. McKee: That's the exact point that I have in mind.' "

(c) *Difference in treatment of the exhibits offered.* The exhibits offered in favor of the charges against Dr. Ball were numbered, photostated, and made available to all members of the board. On the other hand, the exhibits offered in behalf of Dr. Ball were not individually numbered, copied, or photostated but were treated as mere miscellany. The brief in behalf of Dr. Ball charges, without contradiction, that some were even lost before the record was transferred to the circuit court. A fair hearing demands that equal treatment be accorded the exhibits of both parties.

(d) *Magnusen acting as both counsel for the prosecution and judge.* One of the criticisms often leveled against administrative agencies is that they frequently initiate and prosecute proceedings before themselves, which they then must decide in their quasi-judicial capacity. This is not too weighty

an objection if these two functions are not combined in the same person but are intrusted to different personnel of the agency. In order to obviate such objection the Taft-Hartley Act provides for the appointment of the board's general counsel directly by the president instead of the national labor relations board. Likewise, under the Federal Administrative Procedure Act, hearing examiners are provided who are entirely independent of the administrative-agency legal staff who prosecute proceedings before such examiners.

Sometimes practical considerations in the operation of a state administrative agency require that a hearing examiner protect the rights of a litigant not represented by counsel in the proceeding being heard by such examiner, and see that the witnesses of such litigant are asked the proper questions. An illustration of this is afforded in the method under which hearings in workmen's compensation cases are conducted before examiners of the industrial commission. However, in such a situation ch. 102, Stats., provides for review of any decision of the examiner by the three members of the commission who have had no participation in the hearing. In such review no weight need be accorded the examiner's findings.

In *Muench v. Public Service Comm.* (1952), 261 Wis. 492, 514, 53 N. W. (2d) 514, 55 N. W. (2d) 40, this court condemned a proposal that would have required the three members of the public service commission to act in the dual capacity of judges and advocates, thereby denying the attorney general the right to take over the functions of counsel for one of the competing interests. The basic reason why the same person should not be put in the position of acting as both attorney and judge is that, when he lays down his duties as advocate and assumes those of judge, his activities in the

former capacity may tend to influence his judgment while acting in the latter capacity.[1]

In the instant matter there was no necessity for a member of the board to have to assume such a dual role. At the request of the board, a highly capable and experienced assistant attorney general was present at the Madison hearing to represent the board. The excuse offered is that President Hill was without counsel to represent him and present evidence in support of the charges. However, the board could well have requested such assistant attorney general to question the prosecution witnesses, offer exhibits, and enter objections to questions asked by counsel for Dr. Ball. It was far more preferable for such assistant attorney general to get into the position of a partisan than for a member of the board to do so, who later would have to act in a quasi-judicial capacity in deciding the controversy.

Neither this objectionable feature, nor the immediately preceding one relating to the difference in treatment of exhibits, standing alone, might be deemed sufficient by a reviewing court to hold that a fair hearing had been denied. However, when combined with the two more-serious objectionable procedures hereinbefore discussed, the cumulative effect is such as to convince this court that Dr. Ball was denied a fair hearing.

*Academic Freedom and Teacher Good Behavior.*

The matter of Dr. Ball's discharge may be retried again by the board. Because of this we deem it to be our duty to point out a certain type of evidence offered to sustain the charges which we consider could not form the basis of a

---

[1] On this point, cf., *In re Murchison* (1955), 349 U. S. 133, 137, 75 Sup. Ct. 623, 99 L. Ed. 942, and *State ex rel. Getchel v. Bradish* (1897), 95 Wis. 205, 207, 70 N. W. 172.

valid discharge under sec. 37.31 (1), Stats. It is evidence which had to do with specifications dealing with bad behavior rather than inefficiency. Such evidence consisted of reports of remarks that were critical of President Hill and his administration, or of the policies and actions of the board or legislature, which statements were made by Dr. Ball at meetings of the Superior chapter of the Association of Wisconsin State College Faculties, or in private conversations with other faculty members.

Most of the members of the faculty of the college belonged to the Superior chapter of the Association of Wisconsin State College Faculties, and Dr. Ball served as an officer thereof. The proper functioning of such an association requires that the members and officers be accorded the privilege of frankly voicing their criticism of the college administration, and of the individuals exercising the governing powers thereover. Mere words of mouth uttered in such meeting of the chapter, no matter how derogatory, which fall short of instigating other members to engage in a course of wrongful conduct beyond the walls of the meeting, cannot qualify as bad behavior justifying the discharge of the teacher who utters them.

Likewise we do not consider a discharge for bad behavior can be grounded on remarks made by a teacher in private conversation with one or two other fellow faculty members with no outsiders present. By way of illustration of the type of evidence of such character which was offered against Dr. Ball we cite the following instance. The defendant board changed the method of paying the faculty. As a result the so-called "triennial plan" under which a teacher received one summer off with pay every three years was abolished. While the record is not too clear as to the new method substituted for the old, the inference we gather is that under the new plan the teachers receive one tenth of their salary

during each of the ten months of the regular school year. Dr. Ball believed that the effect of the change-over was that the teachers were wrongfully deprived of two months' pay. At the Superior investigation another faculty member, who shared offices with Dr. Ball, testified with respect to a private conversation which took place in such office between the two of them. Such testimony is as follows:

"I was Dr. Ball's office mate during the summer of 1955 when we received memorandum regarding proposed change from the triennial system to the ten months' system. Dr. Ball maintained that we were being cheated out of two months' pay. He took paper and pencil and tried to prove to me that I personally was being cheated and he stated a number of times that this would get President Hill fired and cause the removal of Barney Barstow from the Board of Regents. When I challenged the latter statements he informed me that there were people in town who would see to it."

If such testimony be true, we do not wish to be understood as condoning or approving of the quoted remarks made by Dr. Ball. They most certainly were injudicious and intemperate. However, they were made in a private conversation with another faculty member and constituted mere statements of opinion. They did not request the other faculty member to take any affirmative action in response thereto.

The securing and offering as testimony statements of this character made in meetings of the chapter of the teachers' association, whose members were fellow teachers in the college, or made in private conversation with other members of the faculty, evinces a lack of proper understanding of the principles of academic freedom which are to be accorded to teachers enjoying tenure. There may well be basis for Dr. McKee's previously quoted statement, "This campus is filled with fear." We cannot perceive how it could be otherwise

if the college administration countenances and encourages faculty members to divulge to it remarks made by another teacher in a closed meeting of the local chapter of the teachers' association, or in private conversation with a colleague.

*By the Court.*—Judgment affirmed.

BROWN, J. (*dissenting*). This case is before the court upon certiorari. In *Kuehnel v. Registration Board of Architects* (1943), 243 Wis. 188, 195, 9 N. W. (2d) 630, Mr. Justice FRITZ stated the function of the court in certiorari proceedings thus:

". . . certiorari proceedings . . . are uniformly considered to be only issues of law, because of which there is nothing involved but a review of the record to determine whether the board acted lawfully (*i.e.,* within the scope of powers granted) and reasonably (*i.e.,* whether there was evidence to support its findings)."

My principal disagreement with the court, and which impels me to dissent, seems to me a disregard or lack of appreciation by the majority of the nature of this proceeding. There are many propositions raised by the majority opinion with which I could agree or, at least, with which I would not dissent if we were concerned with some other form of review. But this case is on certiorari and I think the court has not distinguished issues of law from facts which only pertain to the merits or with procedure which does not contravene sec. 37.31 (1), Stats., under which the board must act.

The conclusions of the majority constantly refer to and rely on subdivisions of ch. 227, Stats.

Ch. 227, Stats., dictates procedure for the review of decisions of administrative agencies. No doubt this Board of Regents is an administrative agency of the state. But to have a review under ch. 227, Stats., certain prescribed procedures by the aggrieved person are required for commencing and

completing the review. No effort to comply with those was attempted. For reasons which to Dr. Ball and his counsel seemed good they did not seek or follow the relief afforded by ch. 227, Stats. Instead they sought relief by a writ of certiorari. In my opinion, then, the rules and only the rules which apply in certiorari actions may be invoked and provisions such as sec. 227.13, Stats., may not be lifted piecemeal from ch. 227, Stats., to produce a decision in a certiorari case.

The scope of review in certiorari in the Wisconsin decisions cited by the majority does not seem to me to have the effect of changing our well-established principles. I may freely concede that the Indiana case of *School City of Peru v. State ex rel. Youngblood* (1937), 212 Ind. 255, 7 N. E. (2d) 176, cited by the majority, holds that substantial evidence must be brought to support an administrative decision. It is not the Wisconsin rule in certiorari. It is the rule in our Administrative Procedure Act, sec. 227.20 (1) (d), Stats., but it has no business in certiorari. The correct rule, so recently stated, in *State ex rel. Dane County Title Co. v. Board* (1957), 2 Wis. (2d) 51, 63, 85 N. W. (2d) 864, is:

"If on any reasonable view of the evidence, it will support the conclusion arrived at, the board had jurisdiction to decide as it did. [Cases cited.]"

Also,—

" 'The case is certiorari. When certiorari is invoked to review the action of an administrative board, the findings of the board upon the facts before it are conclusive if in any reasonable view the evidence sustains them.' " *State ex rel. Hynek Co. v. Board* (1954), 267 Wis. 309, 315d, rehearing; *State ex rel. Morehouse v. Hunt* (1940), 235 Wis. 358, 367, 291 N. W. 745; *Wisconsin L. R. Board v. Fred Rueping L. Co.* (1938), 228 Wis. 473, 493, 279 N. W. 673.

Dr. Ball may be discharged only for inefficiency or bad behavior, so provided in sec. 37.31 (1), Stats. The same

section requires the regents to hear and determine the charges. The majority of the court holds that as a prerequisite of discharge the board must make findings specifying in detail those items of inefficiency and bad behavior which were proved. Sec. 37.31 (1) makes no requirement of findings by the board. If findings are necessary, or desirable, *under certiorari* that necessity is satisfied by the board's resolution made on the record that charges have been sustained, as the board did resolve. This is exactly the case that was presented in *State ex rel. Heffernan v. Board* (1945), 247 Wis. 77, 18 N. W. (2d) 461. The opinion, page 85, is in point now:

> "The twenty-two separate acts by Heffernan which constituted the charges are evidentiary. The ultimate fact is his guilt or innocence of conduct subversive to the good order and discipline of the department of police, and this is a conclusion of fact and not one of law; it is arrived at by a judgment whether such of the specific acts as were committed did in fact tend to undermine the good order and discipline of the department."

There we held that the decision of the finding of the ultimate fact of guilt or innocence satisfied the requirements of certiorari where no specific findings are required by statute, just as sec. 37.31 (1), Stats., does not require them.

The majority opinion avoids the *Heffernan Case, supra,* by pointing out that in *Heffernan* there was involved only a municipal, not a state agency. It implies that the provisions of review of state agencies (the regents) are subject to ch. 227, Stats., whereas municipal agencies are not. Of course it is fundamental to my dissent that when review is conducted in certiorari and the relief was not sought by administrative review, ch. 227, Stats., the provisions of that chapter do not apply here any more than they applied in the *Heffernan Case, supra.* Neither *Heffernan* nor the case at bar are administrative review cases. Both cases are certiorari proceedings. What this court said in *Heffernan* respecting find-

ings applies precisely to the necessity, or lack thereof, to the case now before us.

In a review under the provisions of ch. 227, Stats., sec. 227.13, Stats., requires findings of fact upon each contested issue. This is what the majority now demands,—findings on what the *Heffernan Case, supra,* calls evidentiary facts. Again, I consider that to be improperly imported from ch. 227, Stats., into certiorari and now determined to be jurisdictional error for the lack of such findings.

The majority says that the lack of such detailed findings compels the court to grope around in the dark to ascertain if there is evidence to sustain any of the 28 specifications. Presumably the party bringing the charges should be able to point quickly to the evidence but at any rate this evidence does not require much groping.

To support the charge of inefficiency Dr. Rector, registrar of the college and assistant dean, testified: As adviser to 12 students in the graduating class of 1956 Dr. Ball was responsible for arranging their course programs. Eleven of these failed to have completed the required curriculum, due to being put in courses by Dr. Ball where sufficient credits could not be earned.

As registrar and dean, Dr. Rector has the authority and responsibilities usual to his titles. Dr. Ball strongly disagreed with some of Dr. Rector's positions. Ball expressed his displeasure, following a meeting in which they disagreed, by this threat to him, or promise, affecting his actions as an administrative officer of the college:

" 'You think you are riding high and mighty now, but we'll pull you off that high horse. We'll get your job when we get your star-plated boss.' " (Referring to President Hill, a retired major general.)

Without groping farther it seems to me that this testimony of these two instances evidences inefficiency and bad be-

havior within the terms of sec. 37.31 (1), Stats., which permits discharge for cause.

The majority considers that there was a denial to Dr. Ball of a fair hearing. If so, it was a grievous fault, but I do not find the record bears this out.

The majority infers, if not directly holds, that the transcript of the Superior record should not have been introduced in its entirety. The proceeding in this regard is completely stated by Mr. Metzner, counsel for Dr. Ball, as set out in the majority opinion. Mr. Metzner approved the procedure, and so do I.

Then Mr. Metzner, referring to the Superior record, said that hearsay and opinions contained in that record should not be admitted. Regent Magnusen, who conducted the hearing for the board, agreed and ruled that hearsay and opinions would not be considered by the board.

Our majority concludes that Mr. Magnusen committed jurisdictional error in not going through the record and throwing out what hearsay and opinion evidence he found there. Ball's counsel had objected generally. The chairman ruled, sustaining the objection generally. If counsel wanted rulings more specifically to specific evidence he should have made more-specific objections. In the absence of such a request I cannot find a denial by the board of any right due Ball. Nor can I assume, as the majority does, any warrant for the conclusion that the board considered the hearsay and opinions all of which the chairman had directed the board would not consider.

When the majority searched for authority convenient or necessary in the provisions of ch. 227, Stats., it is too bad that inadvertently they missed sec. 227.10 (1), Stats., which reads:

"In contested cases:

"(1) Agencies shall not be bound by common law or statutory rules of evidence. They shall admit all testimony

having reasonable probative value, but shall exclude immaterial, irrelevant, or unduly repetitious testimony. . . ."

This subsection which makes hearsay legitimate would have saved the court all the trouble in their consideration of the hearsay problem if, of course, the court really had much confidence in the applicability of the Administrative Procedure Act, ch. 227, Stats.

The majority considers that Dr. Ball was denied a fair hearing because in the Superior investigation two volunteers appeared who presumably would give information either favorable to Dr. Ball or derogatory to President Hill. Before divulging information the two asked the committee for protection, because of what they might say, against any consequences adversely affecting their status or future salaries. The committee refused to grant such a blanket immunity. These were not the usual witnesses given immunity in exchange for information given under oath. I think the committee went as far as it was proper at the Superior investigation when it told the volunteers that the tenure statute and an appeal to the board, if unjust discrimination was practiced against them, was all the committee could offer. I do not think that the refusal of immunity in the investigation impairs the fairness of the later hearing before the board. Also, as the opinion quotes Dr. Loop, it appears that Dr. Loop was a brave man and determined to talk without promise of immunity beyond what had been offered. There is no offer of proof concerning what additional information would have been divulged under oath at Madison if immunity had been given. There is no showing that Dr. Ball had been prejudiced by the committee's action and no unfairness resulted.

I cannot treat seriously the difference in treatment of exhibits. President Hill made the charges and was prepared to sustain them by exhibits in what he considered an effective manner. He chose to put in his case that way. Ball did it

otherwise. I am unable to ascertain that Ball's method prejudiced him in any respect. At any rate, if so, the fault was not Hill's nor the board's. At least, Ball was present by two counsel to look after his interests. Hill had none.

Nor do I find that Magnusen improperly conducted the hearing. This was a hearing by the board, sec. 37.31 (1), Stats., brought to elicit the facts pertaining to Hill's charges. Magnusen was appointed to run the hearing. He brought out the facts respecting Hill's charges. Ball had two counsel bringing out those to his advantage. Sometimes by statute other procedures are designated,—the majority refers to the Taft-Hartley Act,—but the legislature has not made any such provision in sec. 37.31. In the absence of such prescribed other method I consider that the board, sticking close to the statute by which it was governed, cannot be charged with jurisdictional error.

I would reverse the trial court. There was a wealth of evidence to sustain the inefficiency of Dr. Ball as a teacher and a failure as such to maintain good behavior. The board should be sustained.

Mr. Chief Justice MARTIN and Mr. Justice BROADFOOT respectfully join in this dissent.