LeBow, Appellant, v. OPTOMETRY EXAMINING BOARD, Respondent.

*No. 225.   Argued October 5, 1971.—Decided November 2, 1971.*
(Also reported in 191 N. W. 2d 47.)

570

572

For the appellant there was a brief and oral argument by *Steve Enich* of Milwaukee.

For the respondent there was a brief by *Robert W. Warren,* attorney general, and *David J. Hanson,* assistant attorney general; the cause was argued by *Stephen M. Sobota,* assistant attorney general.

HEFFERNAN, J. Some of the older cases decided by this court conclude that extrinsic evidence to show bias and prejudice are not admissible. *Clark v. Blochowiak* (1942), 241 Wis. 236, 5 N. W. 2d 772. However, since that time the scope of review in certiorari has been considerably broadened. In *State ex rel. Wasilewski v. Board of School Directors* (1961), 14 Wis. 2d 243, 255, 111 N. W. 2d 198, we said:

". . . that a court in reviewing the action of an administrative board or agency in certiorari will go no further than to determine: (1) Whether the board kept within its jurisdiction, (2) whether it acted according to law, (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment, and (4) whether the evidence was such that it

might reasonably make the order or determination in question."

While there is no statutory provision for disqualification in ch. 449, Stats., nonetheless we have recently stated in *Kachian v. Optometry Examining Board* (1969), 44 Wis. 2d 1, 13, 170 N. W. 2d 743, "The common-law duty of disqualification applies where no statutory provisions for disqualification are spelled out." We cannot conclude that the fact that members of the Board had been active in encouraging legislation that would outlaw Dr. LeBow's kind of employment proves bias and prejudice. The 14-point minimum examination was equally applicable to persons who are in their own independent practice. The record also shows that Dr. LeBow had been warned previously of the violation of the 14-point-examination rule. The general rule in respect to the common-law disqualification of administrative officers has been stated as follows:

"An interest to disqualify an administrative officer acting in a judicial capacity may be small, but it must be an interest direct, definite, capable of demonstration, not remote, uncertain, contingent, unsubstantial, or merely speculative or theoretical. There is some indication that bias must be such as to render a tribunal incapable of fair judgment." 1 Am. Jur. 2d, *Administrative Law*, p. 861, sec. 64.

There is no evidence to show any direct demonstrable interest on the part of any board member as required by the common-law rules of disqualification. A review of the record shows that Dr. LeBow was represented by counsel and the Board went to great lengths to insure that he received a fair and impartial hearing. A member of the Board disqualified himself even prior to objection, and the Board allowed Dr. LeBow to submit in evidence exhibits which were intended to show bias and prejudice. We are satisfied that the Optometry Examining Board properly concluded that the showing was not sufficient

to show any disqualifying prejudice on the part of any member of the Board.

In addition, objection was made to the fact that the assistant attorney general appeared as the prosecutor, as well as being the complainant and advisor to the Board. A similar contention was disposed of in *Kachian, supra,* and rejected by this court:

" 'There is authority from several jurisdictions that disqualification for bias or interest will not result where the hearing body or its subordinates, acting within the scope of their proper ministerial functions, participated in the origination of charges against the licensee.' "

Nor do we conclude that it was fatal to the Board's proceedings to have hired an associate or partner of one of the Board members. Under the *Kachian* holding a member of the Board could have initiated the charges himself and could have made the investigation. It would not have been feasible for any of the Board members to have made the investigation, since they were well known to the members of the profession. It is obvious that the investigation would have had to be made by one who was proficient in the practice of optometry. While the petitioner contends that the Board should have hired an independent investigator, we find no bias that arises as a matter of course where the Board determined to use an associate of one of its members. It should be pointed out in the instant case that the investigator's employer, Dr. Wischoff, disqualified himself from sitting on the case. There is no evidence to show that such disqualification was legally necessitated by virtue of the fact that the investigator was an employee.

We are satisfied also that the findings of fact by the Board must be upheld on review. On certiorari the question is whether the evidence was such that the Board might reasonably make the order or determination in question. *State ex rel. Ball v. McPhee* (1959), 6 Wis. 2d 190, 94 N. W. 2d 711. In the instant case, Dr. Eberhardt

testified that Dr. LeBow did not perform the required procedures. Dr. LeBow testified he did perform them and offered in evidence his record card to substantiate his testimony. The issue is one of the credibility of the witnesses. The test is whether reasonable minds could have arrived at the same conclusion reached by the Board. As a trier of fact, the Board was compelled to choose between the testimony of Dr. LeBow and Dr. Eberhardt. Having concluded, as they did, to believe Dr. Eberhardt, no other result was possible. There was substantial credible evidence to support the Board's finding of fact.

Dr. LeBow also objects to the form and substance of the order. He takes the position that under the statute the Board has authority only to insist on examinations of applicants and cannot compel a re-examination of a licensee. He contends that if he takes the examination and fails it, he would be unable to have his license restored. We do not so read the order. Even were he to fail to perform the examination to the satisfaction of the Board, he nevertheless would be restored to his prior status at the end of thirty days. The order in our opinion provides for a suspension of thirty days only. The option is given to Dr. LeBow to reduce the period of suspension in the event he passes the 14-point examination to the satisfaction of the examiners. We held in *Kachian, supra,* that failure to perform the 14-point examination was unprofessional conduct. There is no contention that a suspension for the period of thirty days was arbitrary, oppressive, or unreasonable. Therefore, it would surely not appear to be unreasonable for the Board to give Dr. LeBow the opportunity of reducing a reasonable period of suspension by taking an examination.

*By the Court.*—Judgment affirmed.